IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re: | ) | CIVIL NO. 14-00136 SOM/BMK |
| | ) | |
| AMANDA D. TUCKER, | ) | (Bankr. Case No. 12-02052) |
| | ) | |
| Debtor, | ) | |
| _____ | ) | ORDER AFFIRMING BANKRUPTCY |
| AMANDA D. TUCKER | ) | COURT ORDERS THAT DENIED |
| | ) | RECONSIDERATION OF UNAPPEALED |
| Appellant, | ) | ORDER APPROVING SETTLEMENT |
| | ) | AGREEMENT |
| vs. | ) | |
| | ) | |
| DANE S. FIELD, Trustee; and | ) | |
| LCP-MAUI, LLC, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |
| _____ | ) | |

### ORDER AFFIRMING BANKRUPTCY COURT ORDERS THAT DENIED RECONSIDERATION OF UNAPPEALED ORDER APPROVING SETTLEMENT AGREEMENT

I.       INTRODUCTION.

Anesthesiologist and real estate investor, Amanda D. Tucker, filed a Chapter 7 bankruptcy. Over Tucker's objection, the bankruptcy judge granted the bankruptcy trustee's motion for approval of a settlement agreement under which the successor to Tucker's mortgagee agreed to pay $100,000 into the bankruptcy estate. That order was not appealed. Instead, Tucker appeals the bankruptcy court's denial of a motion for reconsideration of the order, as well as the denial of a motion for reconsideration of the denial of the first order denying reconsideration. Because Tucker raises no argument with any merit, she fails to demonstrate that the bankruptcy judge abused his discretion in

denying the reconsideration motions.  The court therefore affirms those orders without holding a hearing, pursuant to Local Rule 7.2(d) ("Unless specifically required, the court, in its discretion, may decide all matters, including motions, petitions, and appeals, without a hearing.").

II.     **FACTUAL BACKGROUND.**

Tucker is an anesthesiologist.  See ECF No. 19-4, PageID # 1080 (representation to Bankruptcy Court).  Tucker has at times owned a substantial amount of real estate on Maui, Hawaii.  See ECF No. 19-8, PageID # 1146 (representing to the state court in a foreclosure action that, "By the year 2000, Defendant [Tucker] had acquired sixty-five different units on Maui.").  According to the Schedule A (Real Property) filed in her Chapter 7 bankruptcy case, No. 12-02052, Tucker is now the sole owner of eight properties with a combined value that her estimate pegs at $5,454,000.  See Case No. 12-02052, ECF No. 9-1 (filed Oct. 31, 2012).

A.     **Tucker's Loans.**

In December 2006, Tucker got a loan from the Bank of Lincolnwood for $3,115,000 and a revolving credit loan of up to $720,000.  See Promissory Note, ECF No. 19-10; Revolving Credit Note, ECF No. 19-11.  There is no dispute that the notes were secured by eight mortgages on her real property.  According to allonges to the notes, they were assigned to 2010-2 SFR Venture,

2

LLC, and then to LCP-Maui, LLC.  See ECF No. 19-10, PageID No. 1181-92; ECF No. 19-11, PageID # 1194-95.  The mortgages securing the notes were also assigned to SFR Venture, LLC, and then to LCP-Maui, LLC.  See, e.g., Corporate Assignment of Mortgage, filed in the State of Hawaii Bureau of Conveyances as Doc. No. 2011-183396 (Nov. 4, 2011), ECF No. 19-13; Corporate Assignment of Mortgage, filed in the State of Hawaii Bureau of Conveyances as Doc. No. A-47660410 (Jan. 18, 2013), ECF No. 19-14.

According to the Claims Register in her bankruptcy case, claims have been made against Tucker by 1) LCP-Maui for amounts owed under the notes; 2) the State of Hawaii Department of Taxation for $22,951.17; 3) the Internal Revenue Service for $ 3,775,477.31; and 4) American Express Bank for $302.01.  See ECF No. 7-2, PageID #s 217-18.

The 2006 loans were a second refinancing of earlier loans.  Clyde Engle, the former Chairman and Chief Executive Officer of the Bank of Lincolnwood, had met Tucker on Maui and was involved in the earlier refinancing.  See Deposition of Clyde Engle at 6-7, ECF No. 16-3, PageID #s 405-06.  He testified that the earlier refinancing closed on the agreed-upon terms.  Id. at 8, PageID # 407.  Tucker then got behind on her loan payments and discussed a second refinancing with Engle, who told her not to worry about being behind on the payments for her first refinancing loan, as any outstanding debt would be rolled into

the second refinancing loan.  Id. at 17-18, PageID # 416-17.
Engle testified that he was less involved in discussions about
the second refinancing than he had been in discussions about the
earlier refinancing.  While Engle let another employee handle the
second refinancing on behalf of the bank, Engle did agree to give
Tucker a larger loan at a lower interest rate.  As it turned out,
the other employee ended up giving Tucker a loan at a higher
interest rate.  Id. at 10, PageID # 409.  Tucker complained to
Engle that she was not getting the loan she had asked for and
told him that she was under a lot of pressure.  Engle testified
at his deposition that he told her to proceed with the second
refinancing loan and that he would "fix it later."  Id. at 11,
PageID # 410.  Thus, for purposes of the present appeal, there is
no dispute that the 2006 loan for $3,115,000 turned out not to be
the loan Tucker had discussed with Engle.  With the Bank of
Lincolnwood's failure in 2009, Engle lost any ability to adjust
the loan.  Id.

On or about May 4, 2012, 2010 SFR Venture, LLC, filed a
complaint in state court to foreclose on the mortgages securing
the notes for Tucker's 2006 loans from the Bank of Lincolnwood.
See ECF No. 19-31, PageID # 1456 (copy of state-court docket
sheet).

On October 17, 2012, Tucker filed her voluntary
Chapter 7 petition in the underlying bankruptcy case.  See ECF
No. 19-38, PageID # 1515 (copy of bankruptcy court docket sheet).

On November 29, 2012, Tucker filed a Notice of
Bankruptcy in the foreclosure proceeding in state court, causing
that proceeding to be stayed.  See ECF No. 19-31, PageID # 1457.

B.    **Motion to Approve Settlement Agreement,
      Stipulation to Terminate Automatic Stay, and
      Resumption of State-Court Foreclosure Proceedings.**

On April 24, 2013, the bankruptcy trustee filed a
motion to approve a settlement and release agreement.  See ECF
No. 19-8.  Pursuant to that agreement, LCP-Maui was to pay the
bankruptcy trustee $100,000 to settle all claims that the trustee
and the debtor's estate may have had against LCP-Maui relating to
the loans.  See ECF No. 19-8, beginning at PageID # 1111.

Tucker opposed the motion to approve the settlement
agreement.  See ECF No. 19-16.  She argued that the Bank of
Lincolnwood had not acted in good faith in lending her money and
contended that she had rescinded her loan by notifying the FDIC.
She therefore contested the validity of the notes and the eight
mortgages.  She stated that she had no claims against the Bank of
Lincolnwood because that bank no longer existed, and that the
FDIC was the holder in due course of her loan.  She argued that
she had never intended to file a Chapter 7 bankruptcy, but

instead wanted to file a Chapter 11 bankruptcy, and that the settlement was inadequate.  Id.

The trustee's motion to approve the settlement agreement came on for hearing before Bankruptcy Judge Robert J. Faris.  See ECF No. 19-21.  Judge Faris orally granted the motion, noting that the case was seven months old and that he had "to consider not just the interest of the debtor, but also the interest of creditors and the estate, generally."  Id. at 15, PageID # 1348.  He said that the standard for approving settlements "is whether the trustee has reasonably exercised the trustee's business judgment and has come up with a settlement that's within the range of reasonableness, and it does seem to me that this settlement qualifies."  Id. at 16, PageID # 1349.

Judge Faris explained that he had looked "very carefully at the facts that Dr. Tucker states about the circumstances that led up to this loan and taking all those facts as true, they just don't seem . . . likely to add up to a right of rescission."  Id.  He noted that, even if the loan were rescinded, that would not mean that the debt would be extinguished.  Id.  He said that he could not figure out how that debt would be dealt with and that, had Tucker filed a Chapter 11 rather than a Chapter 7 bankruptcy, things would not have been any different.  Id. at 17, PageID # 1350.  Ultimately, Judge

Faris approved the settlement because it was within the range of reasonableness and was in the best interest of the estate.  Id.

A written order approving the settlement was filed on May 23, 2013.  See ECF No. 19-18.

On May 23, 2013, the automatic stay was terminated by the bankruptcy court via an order stipulated to by the trustee of Tucker's bankruptcy estate and LCP-Maui, the new owner of Tucker's loan.  See ECF No. 19-19.

On June 10, 2013, the state court was notified of the termination of the automatic stay.  See ECF No. 19-31, PageID # 1457.  LCP-Maui was thereafter substituted as the plaintiff in the state-court action.  Id., PageID # 1458.

## C.  First Reconsideration Motion.

On December 19, 2013, Tucker filed a motion that sought 1) to vacate the order filed on May 23, 2013, approving the settlement; 2) to vacate the order filed on May 23, 2013, terminating the automatic stay; 3) to reimpose the automatic stay so that the state court foreclosure proceedings would be enjoined; 4) to direct a receiver appointed by the state court to turn over monies to the bankruptcy estate; 5) to conduct further discovery; and 6) to obtain an award of attorneys' fees and costs.  See ECF Nos. 19-24 and 19-25 (hereinafter, "Reconsideration Motion").

Tucker argued in the Reconsideration Motion that the orders entered on May 23, 2013, should be vacated because LCP-Maui had "lied" to Judge Faris about being the owner of Tucker's loan and about Tucker's being in default under the terms of her loan.  See ECF No. 19-25, PageID #s 1397-98.  In support of her contention that LCP-Maui had lied to the court about owning her loan, Tucker said that, after receiving a letter dated December 12, 2012, indicating that LCP-Maui was the "servicer" of her loan, see ECF No. 16-2, PageID # 358 (copy of letter), she had asked the FDIC who owned the loan.  She says that she was told in an e-mail of August 12, 2013, from Craig Weatherwax of the FDIC, that Turning Point Asset Management, LP, owned her loan.  See ECF No. 16-2, PageID # 361.  No other documents have been submitted to this court supporting the Turning Point's supposed ownership of Tucker's loan.  What is before the court is evidence conspicuously omitted by Tucker: a follow up e-mail dated August 15, 2013, three days later, in which Weatherwax corrected himself, telling Tucker that he had previously misidentified the owner of her loan and that the owner of her loan was actually LCP-Maui.  See ECF No. 19-29, PageID # 1446.  Accordingly, the sole factual predicate for her argument that LCP-Maui did not own her loan is something the very source of that information says was a mistake.

Tucker then argued in the Reconsideration Motion that, according to Clyde Engle, the Bank of Lincolnwood's former Chairman and CEO, she was never in default.  She submits no such statement by Engle.  At most, she points to Engle's deposition testimony that he told her not to pay her first refinancing loan, as that debt was going to be wrapped into the second refinancing loan that was the subject of the foreclosure proceeding in state court.  Tucker also argued that, as a matter of law, the loan documents were void under chapter 480 of Hawaii Revised Statutes. Tucker also complained that the trustee should not be allowed to waive Tucker's defenses to the foreclosure proceeding.  See ECF No. 19-25.

Tucker's Reconsideration Motion was heard on January 27, 2014.  A transcript of that hearing is filed as ECF No. 16-9, beginning at PageID # 808.  Judge Faris orally denied the motion, stating that even if the identity of the creditor was not properly disclosed to the court, settlement agreements are evaluated on the basis of their benefit to the estate, which is the same regardless of who pays the estate.  Id. at 2, PageID # 809.  Noting that the FDIC official had corrected his mistake about who owned the loan, Judge Faris pointed to documents indicating that LCP-Maui was the holder of Tucker's note.  Id. at 2-3, PageID #s 809-10.  He then identified as "new information" submitted in support of the Reconsideration Motion the deposition

of Engle.  That deposition corroborated Tucker's claim regarding the loan process, but Judge Faris said that he had already assumed Tucker's version to be true.  Id. at 3, PageID # 810.  His evaluation of the settlement was therefore unchanged.  Id. at 6, PageID # 813.  To the extent Tucker was asking to conduct discovery, Judge Faris ruled that the requested discovery would not affect his approval of the settlement agreement.  Id.

On February 11, 2014, Judge Faris issued his written order denying Tucker's Reconsideration Motion.  See ECF No. 19-32.  This appeal concerns this order.

### D.  Second Reconsideration Motion.

Tucker moved for reconsideration of the court's order of February 11, 2014, which denied the Reconsideration Motion.  See ECF No. 19-33.  The memo in support of this motion was confusing and sometimes relied on what Judge Faris accurately described as "intemperate" language.  See ECF No. 19-34.  For example, Tucker stated, "The court seems completely unaware of the policy of the F.D.I.C. and quasi-federal agencies like Fannie Mae and Freddie Mac to encourage the submission of false declarations to the Court . . . ."  Id. at 4 n.2, PageID # 1473.

On May 27, 2014, Judge Faris denied the second reconsideration motion, noting that it was "less meritorious than the first."  ECF No. 19-36, PageID #s 1497-98.  This appeal is from this order also.

10

**E.    The Mortgages Have Been Foreclosed on in State Court and the Properties Have Been Sold.**

At the hearing on LCP-Maui's renewed motion for summary judgment in the state-court foreclosure case, Tucker argued that LCP-Maui was not the correct party and that, based on a filing she intended to make in the bankruptcy court, the state court should determine that there were questions of fact as to whether LCP-Maui owned the loans. See Transcript of Proceeding, ECF No. 16-8, beginning on PageID # 795-98. Relying on the status of the case before it, the state court judge orally granted the motion. Id., PageID # 804.

On January 29, 2014, the state court filed its written order granting LCP-Maui's renewed motion for summary judgment and decree of foreclosure. See ECF No. 19-35. The state court's findings of fact indicate that Tucker executed and delivered eight separate mortgages to secure her loans from the Bank of Lincolnwood. Id., PageID # 1485. The findings of fact further state that, in 2011, the Federal Deposit Insurance Company, as the receiver for the Bank of Lincolnwood, assigned the notes and mortgages to 2010-2 SFR Venture, LLC, the original plaintiff in the foreclosure proceeding. Id., PageID # 1486. The notes and mortgages were then assigned to LCP-Maui, the new plaintiff in the foreclosure proceeding. Id. According to the findings of fact, Tucker failed to pay what she owed and was therefore in default under the terms of her loan documents. Id., PageID #

11

1487.  As of June 10, 2013, Tucker owed LCP-Maui $5,268,634.88 on the first loan and $1,171,715.33 on the revolving loan.  Id., PageID # 1488.  The state court appointed a commissioner to sell the mortgaged property, allowing LCP-Maui to credit bid for the property.  Id., PageID # 1490-91.

        The state court's docket shows that, in June 2014, the state court granted LCP-Maui's motion for confirmation of foreclosure sale and denied Tucker's request to set aside the summary judgment order of January 29, 2014.  See Orders of June 9 and 17, 2014.

**III.    STANDARD OF REVIEW.**

        This court normally reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo.  See In re Kimura (United States v. Battley), 969 F.2d 806, 810 (9th Cir. 1992) ("The court reviews the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo.").  However, a bankruptcy court's approval of a compromise is reviewed for abuse of discretion. See In re Debbie Reynolds Hotel & Casino, Inc., 255 F.3d 1061, 1065 (9th Cir. 2001); In re A & C Props., 784 F.2d 1377, 1380 (9th Cir. 1986).  This court also reviews for abuse of discretion bankruptcy court orders denying motions for reconsideration.  In re O'Kelley, 420 B.R. 18, 22 (D. Haw. 2009) (citing In re Weiner, 161 F.3d 1216, 1217 (9th Cir. 1998), for proposition that Ninth

12

Circuit reviews bankruptcy court orders independently of Bankruptcy Appellate Panel's decision, and bankruptcy court's denial of motion for reconsideration is reviewed for abuse of discretion); In re Greco, 113 B.R. 658, 662 (D. Haw. 1990).

IV.     **TUCKER SHOWS NO ABUSE OF DISCRETION.**

Tucker did not appeal the original order of May 23, 2013, which approved the settlement agreement, or the stipulated order lifting the automatic stay of the state court's foreclosure proceeding.  She instead waited more than six months to file a motion for reconsideration of those orders to basically rehash her old arguments.  Tucker now appeals the bankruptcy court's order of February 11, 2014, denying her motion for reconsideration, as well as the order of February 27, 2014, denying her motion for reconsideration of the denial of her first reconsideration motion.  Because the court is reviewing denials of motions for reconsideration of an order approving a settlement, the court need not review those orders de novo, contrary to Tucker's contention.

> **A.    This Court Will Not Disturb the State Court's Finding of Fact that LCP-Maui Owned Tucker's Loan.**

Judge Faris did not abuse his discretion when he denied the motions for reconsideration essentially repeating arguments made in the original motion.  Even if this court reviewed de novo Tucker's claim that LCP-Maui did not own her loan, the only reasonable conclusion is that LCP-Maui owned the loan.  Tucker's

attempt to seize on a mistake by Weatherwax of the FDIC is unavailing. Relying on an e-mail that was corrected three days later without even acknowledging the corrected e-mail is not zealous advocacy; it is tantamount to a misrepresentation of the record.

To the extent Tucker argues for the first time on this appeal that LCP-Maui cannot be the owner of her loan because it was not incorporated until December 3, 2012, see ECF No. 16-3, PageID # 392, after the notes and mortgage were assigned to it in October 2012, Tucker lacks standing to challenge the assignment of her loan on that ground. See Benoist v. U.S. Bank Nat's Ass'n, 2012 WL 3202180, *5 (D. Haw. Aug. 3, 2012) (discussing numerous cases in which courts concluded that borrowers lacked standing to challenge assignments of their loan documents, and concluding that plaintiffs could not set aside assignments of mortgages even when pooling and service agreement terms were not followed); Au v. Republic State Mortg. Co., 2012 WL 3113147, *4 n.6 (D. Haw. July 31, 2012) (noting that borrowers who are not parties to or beneficiaries of pooling and service agreements lack standing to challenge alleged violations of such agreements); Bank of New York Mellon v. Sakala, 2012 WL 1424655, *5 (D. Haw. Apr. 24, 2012) (same); Abubo v. Bank of New York Mellon, 2011 WL 6011787, *8 (D. Haw. Nov. 30, 2011) (same); Velasco v. Security Nat'l Mortg. Co., 823 F. Supp. 2d 1061, 1067

14

(D. Haw. 2011) (ruling that borrower could not dispute validity
of assignment of loan documents through "slander of title" claim
because borrower was not party to or intended beneficiary of
assignment).

Notwithstanding Tucker's indignant assertions to the
contrary, the only actual evidence of ownership of the loans
before this court consists of the notes and mortgages, which were
assigned by the Bank of Lincolnwood to 2010 SFR Venture, LLC, and
which in turn assigned them to LCP-Maui.  This is consistent with
the finding of fact made by the state court that LCP-Maui owned
the loan, a finding that this court treats as inviolate under the
Rooker-Feldman doctrine.  See District of Columbia Court of
Appeals v. Feldman, 460 U.S. 462, 482-86 (1983); Rooker v.
Fidelity Trust Co., 263 U.S. 413, 415-16 (1923).

A statement to Tucker that LCP-Maui was going to be
"servicing" her loan is not evidence that LCP-Maui did not own
her loans.  The letter that Tucker relies on, ECF No. 16-2,
PageID # 358, states that "you are hereby notified that the
servicing of your mortgage loan, that is the right to collect
payments from you, has been assigned, sold or transferred to LCP-
Maui."  The letter is not inconsistent with LCP-Maui's ownership
of Tucker's loan.

The court therefore rejects Tucker's argument that LCP-
Maui lacked standing to enter into the settlement agreement with

15

the bankruptcy estate's trustee.  The court also rejects her
contention that the settlement agreement should not have been
approved because of LCP-Maui's "fraud on the Bankruptcy Court,"
as that alleged fraud is based on the same nonobjectionable
conduct.

> **B.  This Court Will Not Disturb the State Court's
> Finding of Fact that Tucker Defaulted on Her
> Loans.**

Tucker not only challenges LCP-Maui's status as the
owner of her loans, she also contends that she was not in default
on her loans.  Again, the state court found to the contrary.
This court must accept the state court's finding that Tucker was
in default, as this court cannot sit as an appellate court over
that decision under the <u>Rooker-Feldman</u> doctrine.

Tucker's argument that she was not in default because
Engle told her not to make payments on the first refinancing loan
is not persuasive.  Engle testified at his deposition that he
told Tucker not to make those payments because the outstanding
loan would be rolled into the second refinancing loan, which is
the loan Tucker defaulted on.  Engle did not testify that Tucker
did not have to make payments on the second refinancing loan, as
represented by Tucker in her opening brief on this appeal.  <u>See</u>
ECF No. 16, PageID # 259.

Engle did promise to "fix" the second loan to match the
terms he had discussed with Tucker, but did not do so because the

bank failed.  Given the state court's determination that Tucker

defaulted on the terms of her loans, Tucker cannot now rely on

this court to undo the state court's decision to enforce the loan

agreements.  Although Tucker had not deposed Engle before the

state court ruled that she had defaulted on her loans, she

clearly could have presented the pertinent circumstances to the

state court because she herself was present as those

circumstances unfolded.  In fact, Tucker had already argued to

the state court with respect to an earlier motion for summary

judgment that the court should not allow foreclosure because the

bank had given her a loan that was not what had been agreed to

and she had signed the loan documents only because she felt that

she had to.  Tucker had argued that the bank's conduct was unfair

and deceptive, violated chapter 480 of Hawaii Revised Statutes,

and rendered the loan unenforceable.  See ECF No. 19-8, PageID #s

1148-49, 1151-52.  Although her opposition to LCP-Maui's motion

for summary judgment is not before this court, she either made

the same argument there or waived it.

        Tucker is incorrect in stating that Engle and Judge

Faris "have admitted that she was not in default."  ECF No. 16,

PageID # 263.  No facts have been submitted to this court

supporting that statement.  Moreover, Tucker has submitted no

evidence indicating that the state court refused to consider her

defenses (e.g., her argument that the loan was void ab initio

17

because it violated chapter 480 of Hawaii Revised Statutes)
before granting summary judgment in favor of LCP-Maui and
allowing it to foreclose on the mortgage and before confirming
the sale of the foreclosed property.  If Tucker presented matters
to the state court and the state court rejected her arguments,
that is not a refusal to consider defenses.

> **C.   The Bankruptcy Court Did not Resolve or Terminate
> Tucker's Individual Defenses to the State Court
> Foreclosure Proceeding.**

Tucker says that the bankruptcy court improperly
terminated her ability to assert defenses in the state court
foreclosure proceedings.  That contention is belied by the
record.  The settlement agreement states that, in return for the
payment of $100,000 by LCP-Maui, the claims of the trustee and
Tucker's bankruptcy estate were settled: "The claims of Trustee
settled herein include all claims, defenses and causes of action
of the Trustee and Debtor's Estate against the Lender, regardless
of whether or not such claims, defenses and causes of action have
been asserted by the Trustee or Debtor's Estate . . . ."  See ECF
No. 19-8, PageID # 1116.  The settlement agreement does not

address Tucker's individual defenses to the state court foreclosure proceeding.

### D. The Bankruptcy Court Did not Abuse its Discretion in Refusing to Reconsider its Earlier Decision that the Settlement Agreement Was in the Best Interest of the Estate.

Tucker confusingly argues that the settlement agreement was not in the best interest of her bankruptcy estate because she "in effect was the entire Estate, her only other and relatively minor creditor being the State of Hawaii Department of Taxation." See ECF No. 16, PageID # 253. The Claims Register filed in the bankruptcy case indicates that the Internal Revenue Service was making a claim against her estate of $ 3,775,477.31. See ECF No. 7-2, PageID #s 217-18.

The bankruptcy court did not abuse its discretion in refusing to reconsider its decision to approve the settlement agreement. Nor did it abuse its discretion when it approved the settlement agreement because the compromise was fair and equitable. See In re A & C Props., 784 F.2d 1377, 1380, 1381 (9th Cir. 1986) (a court may approve compromise agreement that is fair, reasonable, and adequate). In determining whether a settlement agreement is fair, reasonable, and adequate, the bankruptcy court considers:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and

19

delay necessarily attending it; (d) the
paramount interest of the creditors and a
proper deference to their reasonable views in
the premises.

U.S. v. Edwards, 595 F.3d 1004, 1012 (9th Cir. 2010) (quoting In
re A & C Props., 784 F.2d at 1380-81)).

 At the May 22, 2013, hearing concerning the motion to
approve the settlement agreement, Judge Faris stated that he had
looked carefully at the facts and circumstances and noted that
they "don't seem . . . likely to add up to a right of
rescission." ECF No. 19-21, PageID # 1349. He may have been
referring to the D'Oench, Duhme doctrine, which "protects the
FDIC from unwritten agreements that relieve a debtor of the
obligation to pay a facially unconditional note." FDIC v. Craft,
157 F.3d 697, 705 (9th Cir. 1998); but see Ledo Fin. Corp. v.
Summers, 122 F.3d 825, 829 (9th Cir. 1997) (refusing to apply
D'Oench, Duhme doctrine when FDIC is receiver for bank, as FDIC
is standing in shoes of insolvent bank). More likely, Judge
Faris was referring to Tucker's claim that the loan was void ab
initio under chapter 480 of Hawaii Revised Statutes. Judge Faris
noted that Tucker would still owe the money that she had received
from the loans even if the loans were rescinded, and Judge Faris
could not figure out how to deal with that debt. Id., PageID
# 1350.

 Under chapter 480, a mortgagor can seek to have his or
her mortgage documents declared void pursuant to section 480-12,

20

but a successful mortgagor will have to place the parties in a position close to the position they held prior to the mortgage transaction.  See Au v. Republic St. Mort. Co., 948 F. Supp. 2d 1086, 1099 (D. Haw. 2013); Young v. Bank of N.Y. Mellon, 848 F. Supp. 2d 1182, 1193-94 (D. Haw. 2012); Beazie v. Amerifund Fin., Inc., 2011 WL 2457725 (D. Haw. June 16, 2011).  Upon the closing of the loans, Tucker received loan proceeds from the bank.  To avoid a windfall to her, she would need to pay back those loan proceeds if her loans were rescinded.  Tucker never even acknowledged this obligation in proceedings before Judge Faris.

Judge Faris further noted that the bankruptcy case was seven months old and that he had "to consider not just the interest of the debtor, but also the interests of creditors and the estates."  Id., PageID # 1348.  He stated that the trustee, in entering into the settlement agreement, was using his reasonable "business judgment."  Id., PageID # 1349.  The payment of $100,000 from the lender into the bankruptcy estate would provide some money to pay Tucker's creditors.  It would also allow the foreclosure proceeding to go forward.  Once the Chapter 7 bankruptcy proceeding was completed, the lender could not seek a deficiency judgment against Tucker in connection with the foreclosure.  Under these circumstances, this court finds no abuse of discretion in Judge Faris's approval of the settlement.

**V.**       **CONCLUSION.**

This court affirms the bankruptcy court's order denying reconsideration of its approval of a settlement agreement and denying reconsideration of that first denial. Tucker's request for discovery to substantiate the claims she discusses in the appeal is denied. The Clerk of Court is directed to enter judgment pursuant to this order and to close this case.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 12, 2014.




     /s/ Susan Oki Mollway
     Susan Oki Mollway
     Chief United States District Judge


In re: Amanda D. Tucker, Civ. No. 14-00136 SOM/BMK; ORDER AFFIRMING BANKRUPTCY COURT ORDERS THAT DENIED RECONSIDERATION OF UNAPPEALED ORDER APPROVING SETTLEMENT AGREEMENT